## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **GLENDA R. DUNLAP,** Individually and as Personal Representative of the Estate of **JAMES E. DUNLAP,** Deceased, **TIFFINEY DUNLAP, DIANNA SMITH, DERRICK DUNLAP,** and **DERRICK MACK,** )<br><br>)<br>)<br>)<br>)<br>)<br>)<br>*Plaintiff,* )<br>)<br>)<br>vs. )<br>)<br>)<br>)<br>**A.O. SMITH WATER PRODUCTS COMPANY**, a Division of A.O. SMITH CORPORATION, a Delaware Corporation with its principal place of business in the State of Wisconsin; )<br>**A.W. CHESTERTON COMPANY**, a Massachusetts Corporation with its principal place of business in the State of Massachusetts; )<br>**CBS CORPORATION** (*f/k/a* VIACOM, INC., *successor by merger with* CBS CORPORATION *f/k/a* WESTINGHOUSE ELECTRIC CORPORATION), a Delaware Corporation with its principal place of business in the State of New York; )<br>**CLEAVER-BROOKS, INC.**, a Delaware Corporation with its principal place of business in the State of Georgia; )<br>**CRANE CO.**, a Delaware Corporation with its principal place of business in the State of Connecticut; )<br>**FMC CORPORATION** (*sued individually and as successor-in-interest to* PEERLESS PUMP CO.), a Delaware Corporation with its principal place of business in the State of Pennsylvania; )<br>**GOULDS PUMPS LLC** *f/k/a* GOULDS PUMPS, INCORPORATED, a Delaware Corporation with its principal place of business in the State of New York; )<br>**INDIAN HEAD INDUSTRIES, INC.**, a Delaware Corporation with its principal place of business in the State of North Carolina; ) | Cause No.—————————<br><br>**JURY TRIAL DEMANDED** |

**INGERSOLL-RAND COMPANY,** a New )
Jersey Corporation with its principal place of )
business in the State of North Carolina; )
**ITT LLC** (*sued individually and as successor-* )
*in-interest to* ITT CORPORATION f/k/a ITT )
INDUSTRIES, INC., *successor-in-interest to* )
BELL & GOSSETT PUMP CO.), an Indiana )
Corporation with its principal place of business )
in the State of New York; )
**STERLING FLUID SYSTEMS (USA) LLC** )
(f/k/a PEERLESS PUMP COMPANY), a )
Delaware Corporation with its principal place )
of business in the State of Indiana; )
**TRANE U.S. INC.** (f/k/a AMERICAN )
STANDARD, INC. d/b/a AMERICAN )
STANDARD PRODUCTS, INC.), a Delaware )
Corporation with its principal place of business )
in the State of North Carolina; )
**UNION CARBIDE CORPORATION,** a New )
York Corporation with its principal place of )
business in the State of Texas; )
**WARREN PUMPS LLC**, a Delaware )
Corporation with its principal place of business )
in the State of Maryland; )
)
                              Defendants. )

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs **GLENDA R. DUNLAP**, individually and as successor-in-interest to **JAMES E.**

**DUNLAP,** Deceased; along with **TIFFINEY DUNLAP**; **DIANNA SMITH**; **DERRICK**

**DUNLAP**; and **DERRICK MACK** (hereinafter "Plaintiffs") allege as follows:

1.     At all relevant times, each respective Defendant was the agent, servant, employee, and/or

joint-venturer of its co-Defendants. Each Defendant acted in the full course and scope of such

relationship at all such times. At all relevant times, Plaintiffs allege that the following defendants

were individuals, corporations, partnerships, and/or unincorporated associations (1) organized and

existed under the laws of the State of Delaware, some other state or foreign jurisdiction; (2) each of

them were and are still authorized to and are doing business in the State of Delaware, the laws of some other state, or foreign jurisdiction; and/or (3) have regularly conducted business in the State of Delaware: **A.O. SMITH WATER PRODUCTS COMPANY**, a Division of A.O. SMITH CORPORATION, a Delaware Corporation with its principal place of business in the State of Wisconsin; **A.W. CHESTERTON COMPANY**, a Massachusetts Corporation with its principal place of business in the State of Massachusetts; **CBS CORPORATION** (*f/k/a* VIACOM, INC., *successor by merger with* CBS CORPORATION *f/k/a* WESTINGHOUSE ELECTRIC CORPORATION), a Delaware Corporation with its principal place of business in the State of New York; **CLEAVER-BROOKS, INC.**, a Delaware Corporation with its principal place of business in the State of Georgia; **CRANE CO.**, a Delaware Corporation with its principal place of business in the State of Connecticut; **FMC CORPORATION** (*sued individually and as successor-in-interest to* PEERLESS PUMP CO.), a Delaware Corporation with its principal place of business in the State of Pennsylvania; **GOULDS PUMPS LLC** *f/k/a* GOULDS PUMPS, INCORPORATED, a Delaware Corporation with its principal place of business in the State of New York; **INDIAN HEAD INDUSTRIES, INC.**, a Delaware Corporation with its principal place of business in the State of North Carolina; **INGERSOLL-RAND COMPANY,** a New Jersey Corporation with its principal place of business in the State of North Carolina; **ITT LLC** (*sued individually and as successor-in-interest to* ITT CORPORATION f/k/a ITT INDUSTRIES, INC., *successor-in-interest to* BELL & GOSSETT PUMP CO.), an Indiana Corporation with its principal place of business in the State of New York; **STERLING FLUID SYSTEMS (USA) LLC** (f/k/a PEERLESS PUMP COMPANY), a Delaware Corporation with its principal place of business in the State of Indiana; **TRANE U.S. INC.** (f/k/a AMERICAN STANDARD, INC. d/b/a AMERICAN STANDARD PRODUCTS, INC.), a Delaware Corporation with its principal place of business in the State of

North Carolina; **UNION CARBIDE CORPORATION**, a New York Corporation with its principal place of business in the State of Texas; **WARREN PUMPS LLC**, a Delaware Corporation with its principal place of business in the State of Maryland.

## JURISDICTION AND VENUE

2.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c).

3.      (a)     This Court has jurisdiction over this case because there is citizenship diversity, and the matter in controversy exceeds, exclusive of interest and costs, the sum of Seventy-Five Thousand Dollars ($75,000.00). The Defendants are either (1) Delaware corporations and/or are subject to jurisdiction in Delaware because of their (2) respective contacts with the State of Delaware and/or (3) respective conduct of substantial and/or systematic business in Delaware. Specifically, at all relevant times, times foreign corporation-Defendants and/or their predecessors manufactured, processed, produced, supplied, provided, distributed, disturbed, and/or utilized substantial amounts of asbestos and asbestos-containing materials that were sold, distributed, and used in Delaware.

(b)     Schedule A attached hereto identifies (1) the asbestos exposed individual, JAMES E. DUNLAP, and (2) at least one doctor who diagnosed the Decedent with an asbestos-related disease.

### FIRST CAUSE OF ACTION
#### (Strict Liability)

### DEFENDANTS AND/OR THEIR "ALTERNATE ENTITIES" ARE LIABLE TO PLAINTIFFS FOR STRICT PRODUCT LIABILITY BECAUSE:

4.      At all relevant times each respective Defendant was (1) the successor and/or successor-in-business/interest; (2) successor of a product or product line; (3) parent; (4) subsidiary; (5) owned by; or (6) owner of; or (6) member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing,

marketing, warranting, re-branding, manufacturing for others, packaging and advertising a certain mineral substance generically known as asbestos as well as asbestos-containing products.  For brevity's sake, Plaintiffs collectively refer to these entities as the "**alternate entities**." Each respective Defendant is liable to the Plaintiffs its respective alternate entities' tortious conduct. The Defendants are responsible for the alternate entities' acts because the Plaintiffs' remedies against each alternate entity has been virtually destroyed. However, the Defendants have acquired the assets, products, product lines, of each such alternate entity. Defendant shave destroyed the Plaintiffs' remedy against each alternate entity. Each Defendant has assumed the risk-spreading role of each alternate entity.  Finally, each Defendant enjoys the alternate entity's goodwill. Each respective Defendants alternate entities are as follows:.

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| A.O. SMITH WATER PRODUCTS COMPANY | A.O. SMITH CORPORATION |
| A.W. CHESTERTON COMPANY | A.W. CHESTERTON CO. CHESTERTON (A.W.) CHESTERTON INTERNATIONAL, INC. CHESTERTON A.W. CO. |
| CBS CORPORATION | WESTINGHOUSE ELECTRIC CORPORATION WESTINGHOUSE CREDIT CORPORATION BF STURTEVANT VIACOM INTERNATIONAL, INC. VIACOM PLUS CBS CORPORATION CBS BROADCASTING INC. (fka CBS INC.) BLOCKBUSTER INC. MARKETWATCH.COM SPORTSLINE.COM WESTWOOD ONE, INC. VIACOM, INC. WESTINGHOUSE PROCESS CONTROL |
| CLEAVER BROOKS | AQUA-CHEM, INC. CLEAVER-BROOKS COMPANY, INC. NEBRASKA BOILER COMPANY |
| CRANE CO. | CRANE ENVIRONMENTAL |

|  | CRANE PUMPS AND SYSTEMS |
|--|--|
|  | VALVE SERVICES |
|  | CRANE VALVE GROUP |
|  | CRANE SUPPLY |
|  | CHAPMAN VALVE CO. |
|  | DEMING PUMPS |
|  | JENKINS VALVES |
|  | COCHRANE, INC. |
|  | COCHRANE FEED TANKS |
|  | COCHRANE CORPORATION |
|  | STOCKHAM VALVES & FITTINGS, INC. |
| FMC CORPORATION | PEERLESS PUMP COMPANY |
|  | McNALLY INDUSTRIES-NORTHERN PUMP |
|  | FMC AGRICULTURAL PRODUCTS |
|  | FMC BIOPOLYMER |
|  | FMC LITHIUM |
|  | FMC ALKALI CHEMICALS |
|  | FMC FORET |
|  | NORTHERN PUMP COMPANY |
| GOULDS PUMPS LLC | GOULDS PUMPS, INCORPORATED |
|  | GOULDS PUMPS (IPG), INC. |
|  | ITT INDUSTRIES |
| INDIAN HEAD INDUSTRIES, INC. | DETROIT GASKET |
|  | INDIAN HEAD INDUSTRIES, INC., DETROIT GASKET DIVISION |
|  | DETROIT GASKET & MANUFACTURING CO. |
|  | MGM BRAKES |
|  | DG TRIM PRODUCTS |
| INGERSOLL-RAND COMPANY | ALDRICH PUMPS |
|  | BUTTERWORTH COMPANY |
|  | DRESSER-RAND |
|  | INGERSOLL-RAND EQUIPMENT CORPORATION |
|  | INGERSOLL-RAND TRANSPORTATION SERVICES COMPANY |
|  | PACIFIC PUMPS |
|  | POWERWORKS |
|  | TERRY STEAM TURBINE COMPANY |
|  | THERMOKING |
|  | WORTHINGTON PUMP COMPANY |
|  | WHITON MACHINE COMPANY |
| ITT LLC | ITT CORPORATION |
|  | ITT INDUSTRIES, INC. |
|  | FOSTER ENGINEERING COMPANY |

|  | FOSTER VALVE CO. |
|---|---|
| STERLING FLUID SYSTEMS (USA) LLC. | STERLING FLUID SYSTEMS (CANADA) LTD.<br>STERLING FLUID SYSTEMS (COLOMBIA) LTD.<br>PEERLESS PUMP COMPANY<br>LaBOUR PUMP COMPANY<br>STERLING PEERLESS PUMPS |
| TRANE US, INC. | AMERICAN STANDARD COMPANIES, INC.<br>AMERICAN STANDARD PRODUCTS, INC.<br>THE TRANE COMPANY |
| UNION CARBIDE CORPORATION | THE DOW CHEMICAL COMPANY<br>UNION CARBIDE CHEMICALS AND PLASTICS COMPANY, INC.<br>UNION CARBIDE AND CARBON CORPORATION<br>LINDE AIR PRODUCTS COMPANY<br>NATIONAL CARBON CO., INC.<br>PREST-O-LITE CO., INC.<br>UNION CARBIDE COMPANY<br>CARBIDE AND CARBON CHEMICALS CORPORATION<br>BAKELITE COROPORATION<br>UNION CARBIDE CONSUMER PRODUCTS CO.<br>UNION CARBIDE MINING AND METALS DIVISION<br>UNION CARBIDE ELECTRONICS DIVISION<br>UNION CARBIDE HYDROCARBONS DIVISION<br>UNION CARBIDE FERROALLOYS DIVISION<br>JENNAT CORPORATION<br>AMERCHOL CORPORATION<br>UOP<br>UCAR CARBON COMPANY<br>UNION CARBIDE INDUSTRIAL GASES INC.<br>PRAXAIR, INC.<br>POLIMERI EUROPA S.r.l.<br>ASIAN ACETYLS COMPANY, LTD. |

EQUATE PETROCHEMICAL COMPANY
UNIVATION TECHNOLOGIES

WARREN PUMPS LLC                    WARREN PUMPS, INC.
                                    WARREN PUMPS-HOUDAILLE, INC.
                                    COLFAX PUMP GROUP
                                    ALWEILER AG
                                    HOUTTUIN BV
                                    IMO PUMP
                                    ZENITH PUMPS
                                    QUIMBY PUMP COMPANY, INC.

5.      Defendants, as well as their respective alternate entities knew and intended that their asbestos and asbestos-containing products be used by the purchaser or user without inspection for defects or in any of their component parts and without knowledge of the hazards involved in such use.

6.      Defendants' asbestos and asbestos-containing products were defective and unsafe for their intended purpose because breathing asbestos fibers causes serious disease and/or death. The defect existed in said the asbestos and asbestos-containing products at the time they left the Defendants' possession and caused personal injuries, including asbestosis, other lung damage, cancer, and Lung Cancer to users, consumers, workers, bystanders, and others, including Mr. Dunlap while being used in a reasonably foreseeable manner. Therefore, the Defendants' asbestos and asbestos-containing products were defective, unsafe, and dangerous for use.

7.      At all relevant times, the Defendants' asbestos and asbestos-containing products failed to perform as safely as an ordinary consumer and/or other "exposed persons" would expect when used in an intended or reasonably foreseeable manner. Moreover, the asbestos and/or asbestos-containing products' inherent dangers outweighed their benefits.

8.      At all relevant times, the asbestos and asbestos-containing products' foreseeable use involved a substantial danger not readily recognizable to an ordinary user, consumer, or bystander, or other "exposed persons" but was known or knowable to Defendants. The Defendants, however failed to adequately warn of this substantial danger.

9.      Mr. Dunlap was not aware of the substantial danger of using Defendants' products, and

these dangers were not readily recognizable by him. These Defendants and their alternate entities failed to adequately warn of the risks to which JAMES E. DUNLAP, and others similarly situated, were exposed.

10.     Defendants and their "alternate entities" knew or should have known of the inherent dangers of their asbestos and asbestos-containing products. Nonetheless these defendants intended that such asbestos-containing products and/or equipment would be used or handled as described in Exhibit "A." Exhibit A is attached to and incorporated into this Complaint. When the Defendants' asbestos products was used and/or handled, it released airborne asbestos fibers. The foreseeable use and handling of the Defendants' asbestos-containing products and equipment exposed JAMES E. DUNLAP (and others) to these asbestos fibers.

11.     JAMES E. DUNLAP used, handled, or was otherwise to the Defendants' asbestos and asbestos-containing products and equipment in a reasonably foreseeable manner. JAMES E. DUNLAP' exposure to asbestos and asbestos-containing products occurred at various locations described in Exhibit "A."

12.     As a direct and proximate result Defendants and their respective alternate entities' conduct, JAMES E. DUNLAP's asbestos exposure to asbestos and asbestos-containing products caused severe and permanent injury to the Plaintiffs; the nature of which, along with the date of Decedent JAMES E. DUNLAP's diagnosis and the date he learned such injuries were attributable to exposure to asbestos and/or asbestos-containing products, are set forth in Exhibit "B." Exhibit B is attached to and incorporated into this Complaint.

13.     Plaintiffs allege that progressive lung disease, cancer, and other serious diseases are caused by inhaling asbestos fibers without perceptible trauma. The resulting disease occurs over a period of time.

14.     On or about August 16, 2017, JAMES E. DUNLAP suffered and died from lung cancer. Mr. Dunlap' Lung Cancer was caused by his exposure to asbestos and asbestos-containing products and equipment. At the time of Mr. Dunlap' exposure to asbestos and asbestos-containing products and equipment, he was unaware that asbestos or asbestos-containing products presented any risk of

injury and/or disease.

15.     As a direct and proximate result of the Defendants' conduct referenced above, Decedent JAMES E. DUNLAP suffered permanent injuries to his person, including, but not limited to, Lung Cancer, other lung damage, and cancer, from the effect of exposure to asbestos fibers, all to the Plaintiffs' general damage in a sum in excess of the jurisdictional limit.

16.     As a direct and proximate result of the Defendants' conduct referenced above, Plaintiffs incurred: liability for physicians, surgeons, nurses, hospital care, medicine, hospices, X-rays and other medical treatment, the true and exact amount thereof being unknown to Plaintiffs at this time. Plaintiffs respectfully request leave to amend this complaint accordingly when the true and exact cost of such treatment is ascertained.

17.     As a direct and proximate result of the Defendants' conduct referenced above, Plaintiffs have and will continue to be: deprived of the support, society, solace, care, comfort, companionship, affection, advice, service and guidance of a husband and father in JAMES E. DUNLAP. Plaintiffs have and will also incur: pecuniary losses, including loss of income, wages, profits, and commissions, a diminishment of earning potential, and other pecuniary losses; the full nature and extent of which are not yet known. Plaintiffs request leave to amend this complaint to conform to proof at the time of trial.

18.     In researching, manufacturing, fabricating, designing, modifying, testing, or failing to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging, and advertising asbestos and asbestos-containing products and equipment, Defendants and their "alternate entities" did so with conscious disregard for the safety of anyone, including James E. Dunlap, who came in contact with their asbestos and asbestos-containing products, including, but not limited to, asbestosis, other lung damages, and cancer. The Defendants obtained this knowledge, in part, from scientific studies performed by, at the request of, or with the assistance of, such Defendants, their "alternate entities", on or before 1930, and thereafter.

19.     On or before 1930, and thereafter, the Defendants and their "alternate entities" were aware that the general public and other persons, including James E. Dunlap, who would/were likely to come in contact with their asbestos and asbestos-containing products, had no knowledge or information indicating that asbestos or asbestos-containing products could cause injury. The Defendants and their "alternate entities" also knew that the general public and other persons, including Mr. Dunlap, who came in contact with asbestos and asbestos-containing products, would assume, and in-fact did assume, that exposure to asbestos and asbestos-containing products was safe; such exposure was actually extremely hazardous to health and human life.

20.     With this knowledge, the Defendants and their "alternate entities" opted to research, manufacture, fabricate, design, modify, label, assemble, distribute, lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair, market, warrant, re-brand, manufacture for others, package, and advertise said asbestos and asbestos-containing products without attempting to protect users, bystanders, or any other people, including but not limited to, James E. Dunlap, from, or warn of the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products. Rather than attempting to protect such people from, or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products, Defendants and their "alternate entities" intentionally failed to reveal their knowledge of said risk, failed to warn of said risk and consciously and actively concealed and suppressed said knowledge from such people and the general public, thus impliedly representing to such people and the general public that asbestos and asbestos-containing products were safe for all reasonably foreseeable uses. Defendants, and their "alternate entities" engaged in this conduct and made these implied representations with the knowledge of the falsity of said implied representations.

21.     The Defendants and their "alternate entities", engaged in the conduct described in this Complaint motivated by their financial interest. The Defendants and their "alternate entities" engaged in the continuing, uninterrupted research, design, modification, manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply, sale, inspection, installation,

contracting for installation, repair, marketing, warranting, re-branding, manufacturing for others, packaging and advertising of asbestos and asbestos-containing products. Because of this financial motivation, Defendants and their "alternate entities" consciously disregarded the safety of users, bystanders, or any other people, including but not limited to, James E. Dunlap, and were consciously willing and intended to permit asbestos and asbestos-containing products to cause injury to such people and induced such people to work with and be exposed thereto.

22.     Defendants, their "alternate entities", their officers, directors, and managing agents participated in, authorized, ratified, and had full knowledge of, or should have known of, each of the acts set forth in this Complaint.

23.     Defendants and their alternate entities are liable for the fraudulent, oppressive, and malicious acts of their "alternate entities." Each of Defendants' officers, directors, and managing agents participated in, authorized, ratified, and had full knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth in this Complaint.

24.     The Defendants' conduct described in this Complaint was and is willful, malicious, fraudulent, outrageous, and in conscious disregard and indifference to the safety and health of users, bystanders, or any other people, including but not limited to, James E. Dunlap. Plaintiffs, seek punitive damages for acts, which include but are not limited to: Defendants and their "alternate entities", impliedly warranted their asbestos and asbestos-containing products and equipment to be safe for their intended use, but their asbestos and asbestos-containing products created an unreasonable risk of bodily harm to Decedent JAMES E. DUNLAP.

25.     Decedent, JAMES E. DUNLAP's injuries and death are a result of cumulative exposure to asbestos and various asbestos-containing products and equipment manufactured, fabricated, inadequately researched, designed, modified, inadequately tested, labeled, assembled, distributed, leased, brought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged and advertised by the aforementioned Defendants and their "alternate entities," and each of them constituted a substantial contributing factor to Decedent's development of the asbestos disease

complained of herein. Among the injurious exposures alleged herein are Decedent JAMES E. DUNLAP's exposures to asbestos supplied with, affixed and/or added to, and/or installed on the equipment identified in schools, buildings, and other facilities, including but not limited to, the Governor Morehead School Complex in Raleigh, NC.

26.     Decedent JAMES E. DUNLAP relied upon Defendants and "alternate entities," and each of their representations, lack of adequate warnings, and implied warranties of the fitness of asbestos and asbestos-containing products. As a direct, foreseeable, and proximate result thereof, Decedent was injured permanently as alleged herein.

27.     As a direct and proximate result of the actions and conduct outlined herein, Decedent JAMES E. DUNLAP suffered the injuries and damages alleged herein.

28.     Plaintiffs requests judgment against all of Defendants to the fullest extent of the law and as described in this Complaint.

## SECOND CAUSE OF ACTION
### (Negligence)

## DEFENDANTS AND/OR THEIR "ALTERNATE ENTITIES" ARE ALSO LIABLE TO PLAINTIFFS FOR NEGLIGENCE BECAUSE:

29.     All of Plaintiffs' allegations in the First Cause of action are incorporated into this Section of Plaintiffs' Complaint.

30.     At all times herein mentioned, Defendants and "alternate entities" negligently and carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged, and advertised a certain substance commonly known as "asbestos" and other asbestos-containing products and equipment. The Defendants' asbestos and asbestos-containing products proximately caused personal injuries to James E. Dunlap, while being used in a manner that was reasonably foreseeable,

thereby rendering the Defendants' asbestos and asbestos-containing products unsafe and dangerous for use by users, bystanders, and other people, including but not limited to James E. Dunlap.

31.     Defendants and their "alternate entities" had a non-delegable duty to exercise due care while conducting their business as described above. Each Defendant breached their duty to exercise such due care.

32.     Defendants and their "alternate entities" intended, knew or should have known that their asbestos and asbestos-containing products would be transported by truck, rail, ship and other common carriers, and that in the shipping process the products would break, crumble or be otherwise damaged; and/or that such products would be used for insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not limited to: sawing, chipping, hammering, scraping, sanding, breaking, removal, "rip-out", and other manipulation, resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or handling users, bystanders, and other people, including but not limited to James E. Dunlap, would use and/or be in proximity of and exposed to such asbestos fibers.

33.     As a direct and proximate result of the actions and conduct outlined herein, Plaintiffs has suffered the injuries and damages alleged herein.

### THIRD CAUSE OF ACTION
#### (False Representation Under Restatement of Torts Section 402-B)

### DEFENDANTS AND/OR THEIR "ALTERNATE ENTITIES" ARE ALSO LIABLE TO PLAINTIFFS FOR THEIR FALSE REPRESENTATIONS:

34.     All of Plaintiffs' allegations made above are incorporated into this section of Plaintiffs' Complaint.

35.     At all relevant times when Defendants and their "alternate entities" researched, manufactured, fabricated, designed, modified, tested or failed to test, inadequately warned or failed to warn, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded,

manufactured for others, packaged and advertised said the asbestos and asbestos-containing products described above they also represented to the general public including but not limited to, Decedent JAMES E. DUNLAP and his employers, that asbestos and asbestos-containing products, were of merchantable quality, and safe for the use for which they were intended.

36.     The purchasers and users of Defendants' asbestos and asbestos-containing products, including but not limited to, Decedent JAMES E. DUNLAP, and his employers, relied upon the Defendants' representations of in the selecting, purchasing, and using asbestos and asbestos-containing products.

37.     The Defendants' representations and those of their alternate entities were false and untrue. The Defendants knew at the time they were untrue, in that the asbestos and asbestos- containing products and equipment were not safe for their intended use, nor were they of merchantable quality as represented by Defendants in that asbestos and asbestos-containing products and equipment have incredibly dangerous properties and defects whereby said products cause asbestosis, other lung damages, and cancer, and have other defects that cause injury and damage to the users and bystanders of such products, including but not limited to James E. Dunlap, thereby threatening the health and life of such persons.

38.     As a direct and proximate result of said false representations by Defendants and their "alternate entities," James E. Dunlap sustained the injuries and damages alleged herein.

## FOURTH CAUSE OF ACTION

(Loss of Consortium)

## PLAINTIFF GLENDA R. DUNLAP COMPLAINS OF DEFENDANTS, DOES 1-400, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM

39.     Plaintiff GLENDA R. DUNLAP incorporates by reference, each and every paragraph of the First through Fifth Causes of Action herein.

40.     Decedent JAMES E. DUNLAP and Plaintiff GLENDA R. DUNLAP were married on October 21, 1978, and up to and including the date of his death on August 16, 2017, were, and had been, husband and wife.

41.     Prior to Decedent JAMES E. DUNLAP's injuries and death as alleged, he was able and did perform duties as a spouse.  Subsequent to the injuries and as a proximate result thereof, Decedent JAMES E. DUNLAP was unable to perform the necessary duties as a spouse and the work and services usually performed in the care, maintenance, and management of the family home, and he will be unable to perform such work, service and duties in the future. As a proximate result thereof, GLENDA R. DUNLAP has been permanently deprived and will be deprived of the consortium of her spouse, including the performance of duties, all to his damages, in an amount presently unknown but which will be proved at the time of trial.

42.     Plaintiff GLENDA R. DUNLAP's discovery of this cause of her loss of consortium, as herein alleged, first occurred within one year of the date this Complaint was filed.

43.     As a direct and proximate result of the acts of Defendants, their "alternate entities", and each of them, and the severe injuries and death caused thereby to Decedent JAMES E. DUNLAP, as set forth in this complaint, Plaintiff GLENDA R. DUNLAP has suffered, and for a long period of time will continue to suffer, loss of consortium, including, but not limited, loss of services, marital relations, society, comfort, companionship, love and affection of said spouse, and has suffered severe mental and emotional distress and general nervousness as a result thereof.

WHEREFORE, Plaintiffs pray for judgment against Defendants, their "alternate entities," and each of them, as is hereinafter set forth.

### FIFTH CAUSE OF ACTION
### (WRONGFUL DEATH)

**DEFENDANTS AND/OR THEIR "ALTERNATE ENTITIES" ARE ALSO LIABLE TO PLAINTIFFS FOR WRONGFUL DEATH BECAUSE:**

44.     All allegations above are incorporated herein.

45.     As a result of developing Lung Cancer, James E. Dunlap suffered and sustained very serious injuries and died as a result.

46.     Plaintiffs allege that because of Defendants' conduct James E. Dunlap' injuries and illnesses were permanent in nature and that he was forced to suffer until his death; that his life enjoyment

was impaired, and that his expected life span was shortened.

47.     Decedent JAMES E. DUNLAP died in Wake County, North Carolina. Plaintiff GLENDA R. DUNLAP qualified as Personal Representative of the Estate of JAMES E. DUNLAP.

48.     As a result of the Defendants' conduct the Decedent and all Plaintiffs are entitled to recover compensatory and punitive damages from the Defendants. Mrs. Dunlap and all of Mr. Dunlap' heirs have also lost Mr. Dunlap' services, protection, care, support, guidance, assistance, and love.

49.     Plaintiffs respectfully request that that the Defendants be cited to appear and answer herein as the law commands. Furthermore, upon final hearing hereof, Plaintiffs request judgment from the Defendants jointly and severally, for damages in excess of Seventy-Five Thousand Dollars ($75,000.00) for general, compensatory and special damages; plus a sum well in excess of Seventy-Five Thousand Dollars ($75,000.00) for punitive damages; for medical expenses in an amount to be shown upon the trial hereof; together with costs and disbursements herein, and interest on said judgment from the date of filing until paid as by law provided, for costs of this action and such other and further relief as to which they may be entitled.

50.     The Defendants' conduct described above was a direct, proximate and producing cause of the damages resulting from asbestos-related lung disease of Decedent, and of the following general and special damages including:

(a)     Damages to punish Defendant for proximately causing Decedent's untimely death;

(b)     For the past, present, and future pain and suffering, mental and emotional anguish, and anxiety sustained by Plaintiffs and Decedent;

(c)     The physical impairment suffered by Decedent;

(d)     The disfigurement suffered by Decedent;

(e)     Reasonable and necessary past, present, and future medical and related expenses according to proof incurred by Decedent;

(f)     Decedent's lost earnings and net accumulations;

(g)     Reasonable funeral and burial expenses incurred by Decedent's estate;

(h)     Decedent's mental anguish caused by the anticipation of pain, death, and forever leaving his beloved family;

(i)      Past and future loss of the companionship and society, care, advice, counsel and consortium which Plaintiffs would have received from the Decedent prior to his illness and death caused by his exposure to asbestos;

(j)      The past and future mental anguish suffered by Decedent's heirs as a consequence of observing the last illness and death of the Decedent;

(k)      The past and future pecuniary loss and loss of inheritance suffered by Decedent's heirs as a consequence of the death of Decedent;

(l)      Plaintiff seeks punitive and exemplary damages; and

(m)      Any and all recoverable survival and wrongful death damages on behalf of all statutory beneficiaries of the Decedent.

(n)      For Plaintiffs' general damages according to proof;

(o)      For damages for fraud according to proof.

(p)      For Plaintiffs' cost of suit herein;

(q)      For pre- and post-judgment interest; and

(r)      For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demands trial by jury as to all issues so triable.

Dated: May 31, 2019                           Respectfully submitted,

Of Counsel:                                   THE BIFFERATO FIRM P.A.

Christopher L. Johnson                        */s/ Ian Connor Bifferato*
WATERS, KRAUS & PAUL                          Ian Connor Bifferato (Bar No. 3273)
3141 Hood Street, Suite 700                   The Bifferato Firm P.A.
Dallas, TX 75219                              1007 North Orange Street, 4th Floor
214-357-6244 Telephone                        Wilmington, DE 19801
214-357-7252 Facsimile                        Telephone: (302) 225-7600
cjohnson@waterskraus.com                      Fax: (302) 298-0688
                                              cbifferato@tbf.legal

                                              Brian E. Farnan (Bar No. 4089)
                                              Michael J. Farnan (Bar No. 5165)
                                              FARNAN LLP
                                              919 N. Market St., 12th Floor

Wilmington, DE 19801
Telephone: (302) 777-0300
Fax: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Plaintiff*

EXHIBIT "A"

Decedent JAMES E. DUNLAP's exposure to asbestos and asbestos-containing products occurred at various locations within the United States including, but not limited to:

| Location of Exposure | Job Title | Exposure Dates |
|---|---|---|
| State of North Carolina, Department of Administration<br><br>Governor Morehead School Complex<br><br>Various buildings including the Brooks Street State Building | Plumber | 1976-2009 |

EXHIBIT "B"

Decedent JAMES E. DUNLAP's exposure to asbestos and asbestos-containing products caused severe and permanent injury to the Decedent including, but not limited to, breathing difficulties, asbestosis, Lung Cancer, lung and/or other cancer, and/or other lung damage. Decedent JAMES E. DUNLAP was diagnosed with lung cancer on or about August 15, 2017. Decedent JAMES E. DUNLAP was retired at the time he was diagnosed with lung cancer.