IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IN RE: ASBESTOS LITIGATION )
)
GLENDA R. DUNLAP, *Individually and as* )
*Personal Representative of the Estate of* )
JAMES E. DUNLAP, et al., )
)
    Plaintiffs, )
)
v. ) Civil Action No. 19-1009-MN-SRF
)
A.O. SMITH WATER PRODUCTS )
COMPANY, et al., )
)
    Defendants. )

**REPORT AND RECOMMENDATION**

**I. Introduction**

Presently before the court in this asbestos litigation is a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 filed by defendant Crane Co. (D.I. 101) For the following reasons, I recommend GRANTING Crane Co.'s motion for summary judgment.[1]

**II. Background**

**A. Procedural History**

James Edward Dunlap ("Mr. Dunlap") developed lung cancer and died on August 16, 2017, allegedly as a result of asbestos exposure from several defendants' products, including Crane Co. (D.I. 105, Exs. 1–2) On May 31, 2019, plaintiff Glenda R. Dunlap, individually and as personal representative of Mr. Dunlap's estate, along with plaintiffs Tiffiney Dunlap, Dianna Smith, Derrick Dunlap, and Derrick Mack (collectively, "Plaintiffs"), filed this action asserting

---

[1] The briefing for the present motion is as follows: Crane Co.'s opening brief (D.I. 102), Plaintiffs' answering brief (D.I. 105), and Crane Co.'s reply brief (D.I. 108).

strict liability, negligence, false representation, loss of consortium, and wrongful death claims, invoking the court's diversity jurisdiction. (D.I. 1) On September 30, 2020, Crane Co. filed the present motion for summary judgment. (D.I. 101)

### B. Facts

From 1979 to 1983, Mr. Dunlap worked for the North Carolina Department of Administration ("the DOA") as a plumber. (D.I. 105, Ex. 3 at 39:16–20, 43:23–24, Ex. 4) As a plumber for the DOA, Mr. Dunlap worked directly on various items, including boilers, pumps, compressors, and piping. (D.I. 105, Ex. 3 at 51:9–13) While Mr. Dunlap was a plumber for the DOA, his brother, Prentis Dunlap (together with Mr. Dunlap, "the Dunlap brothers"), was a steam plant supervisor for the DOA. (*Id.* at 46:3–47:25; D.I. 102, Ex. A at 39:16–40:4) During that time, the Dunlap brothers worked directly together two to four days per week, ranging anywhere from three-hour periods to six- or seven-hour shifts. (D.I. 105, Ex. 3 at 46:9–48:8) Prentis Dunlap gave a deposition on February 25, 2020. (D.I. 58; D.I. 105 at Ex. 3) He is Plaintiffs' only product identification witness in this case.

#### i. The Kewanee Boiler's Steam Header Valve

The Dunlap brothers worked together on the valves of "the Kewanee boiler" at the Governor Morehead School on one occassion. (D.I. 102, Ex. A at 66:21–24; D.I. 105, Ex. 3 at 62:17–63:14) Specifically, they repacked the steam header valve and the feedwater valves on the Kewanee boiler. (D.I. 105, Ex. 3 at 62:17–63:14) The Dunlap brothers removed the flange from the steam header valve and removed the old packing material using a hook, which took thirty minutes. (D.I. 102, Ex. A at 63:15–65:14) They replaced the old material with new packing material, which took another fifteen minutes. (*Id.* at 65:12–66:4)

Prentis Dunlap knew that the Kewanee boiler's steam header valve was manufactured by Crane Co. because he saw a Crane Co. stamp on a tag on the valve when the Dunlap brothers worked on it. (D.I. 105, Ex. 3 at 63:15–64:13) The Kewanee boiler's steam header valve was a gate valve with an eight-inch iron flange used to release steam from the boiler at a temperature of 400 degrees. (*Id.* at 62:17–64:25) However, Prentis Dunlap could not recall the manufacturer of the old or replacement packing material he worked on with Mr. Dunlap. (D.I. 102, Ex. A at 63:15–66:24) In addition, Prentis Dunlap could not recall whether either the old or replacement packing material contained asbestos, but he described the old packing material as looking like "graphite packing" that "would dry" upon removal. (*Id.* at 65:15–66:16)

### ii. "The Manhole" Valves

Prentis Dunlap also testified at his deposition that he had worked with Mr. Dunlap in an area called "the manhole." (*Id.* at 99:13–22) For two weeks every September while the Dunlap brothers worked together for the DOA, the steam to the relevant pipes in the manhole area was turned off for repairs. (*Id.* at 97:4–98:2) Before shutting the area down, the Dunlap brothers walked through the manhole area to look for and inspect steam leaks. (*Id.* at 100:19–102:6) The Dunlap brothers would contact a third-party contractor, to inspect the valves in the area. (*Id.* at 101:9–102:6) If valve in the manhole area needed to be replaced, the Dunlap brothers would remove the insulation from each flange of the valve and the packing around the piping to prepare the work area for the contractors who would eventually replace the valve. (*Id.* at 101:8–102:21, 104:20–105:6, 144:5–146:4) Valves were replaced in this manner every two or three years. (*Id.* at 144:5–145:14) Prentis Dunlap could not recall the manufacturer of the insulation Mr. Dunlap removed from flanges of the Crane Co. valves in the manhole area. (*Id.* at 104:14–19)

Prentis Dunlap saw Mr. Dunlap repack a Crane Co. valve three or four times in the manhole area before 1982. (*Id.* at 99:13–104:7) Prentis Dunlap knew that Crane Co. had manufactured three of the valves in the manhole area because he saw a Crane Co. stamp on a tag on the each of those valves when he saw Mr. Dunlap work on them. (*Id.* at 100:10–101:7) The Crane Co. valves present in these manholes were gate valves with twelve-inch iron flanges. (*Id.* at 100:23–101:7) Repacking each valve took about thirty minutes and occurred in a manner similar to the repacking of the steam header valve on the Kewanee boiler. (*Id.* at 104:4–13) Prentis Dunlap could not recall the manufacturer of the materials used in repacking the Crane Co. valves in the manhole area. (*Id.* at 104:14–19, 145:21–146:4) He observed Mr. Dunlap clean up the area after a contractor had replaced valves but cannot state whether such debris contained asbestos. (*Id.* at 104:14–19, 145:21–146:4)

Prentis Dunlap testified that there was an employee meeting in 1982 during which the attendees were informed about the hazards of asbestos. (D.I. 105, Ex. 3 at 75:23–76:21) After 1982, the Dunlap brothers and other employees wore protective equipment, including hazard suits and respirators, whenever they worked with asbestos. (*Id.* at 75:23–77:22) Accordingly, "Plaintiffs do not allege that Mr. Dunlap was exposed to any respirable asbestos after 1982." (D.I. 105 at 3)

### iii. Crane Co.'s History of Using Asbestos-Containing Materials in Valves

In their opposition to Crane Co.'s motion, Plaintiffs cite to discovery responses and documents produced by Crane Co. to demonstrate Crane Co.'s past history of incorporating asbestos-containing materials in its valves. (*See* D.I. 105 at 3–4) Crane Co. may have sold asbestos-containing industrial valves as early as 1855. (D.I. 105, Ex. 7 at 10) Crane Co. sold Cranite, a "sheet packing" product comprised of 75%–85% chrysotile asbestos, from 1920 until

4

1972. (*Id.*) Crane Co. "unhesitatingly recommended" Cranite for various applications, including steam and for temperatures up to 750 degrees Fahrenheit. (D.I. 105, Ex. 8 at 453) Crane Co. did not discover an alternative material to asbestos for its packing material until 1979, at the earliest. (D.I. 105, Exs. 9–12) In a letter dated March 9, 1981, Crane Co. noted the difficulty in finding a substitute for asbestos capable of withstanding the temperature ranges that asbestos materials could withstand. (D.I. 105, Ex. 11)

### iv. Crane Co.'s Alleged Failure to Warn

As early as the 1970s, Crane Co. employees knew about the link between asbestos exposure and disease. (D.I. 105, Ex. 20 at 35) In 1971, the Occupational Safety and Health Administration ("OSHA") promulgated "an emergency temporary standard concerning exposure to asbestos fibers." (D.I. 105, Ex. 21 at 11318) Despite being aware of the OSHA standards and knowing that it sold asbestos-containing products, Crane Co. never conducted tests to determine the potential health risks associated with asbestos generally, its Cranite product, or any of its other products fit for industrial use. (D.I. 105, Ex. 7 at 11–12) Further, Crane Co. did not apply warnings to its asbestos-containing products until the mid-1980s. (*Id.* at 14–15) The warning label read as follows: "CAUTION – Contains Asbestos Packing or Gasket." (*Id.*; D.I. 105, Ex. 5 at 24–25) Crane Co. eventually removed asbestos-containing components from its industrial valves that were manufactured in the United States in the mid-1980s, except for one type of valve designed for petroleum industry applications, which continued to incorporate an asbestos-containing component until the late 1980s or early 1990s. (D.I. 105, Ex. 5 at 12–13; *see also* D.I. 105, Ex. 22)

5

### III. Legal Standard

#### A. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that could affect the outcome of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

The moving party bears the initial burden of proving the absence of a genuinely disputed material fact. *See Celotex*, 477 U.S. at 322. The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial, and the court must view the evidence in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989); *Scott v. Harris*, 550 U.S. 372, 380 (2007). An assertion of whether or not a fact is genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475

6

U.S. at 586. The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" rather, there must be enough evidence to enable a jury to reasonably find for the non-moving party on the issue. *See Anderson*, 477 U.S. at 247-49 (emphasis in original). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (internal citations omitted); *see also Celotex*, 477 U.S. at 322. If the non-movant fails to make a sufficient showing on an essential element of its case on which it bears the burden of proof, then the movant is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322–23.

If a party fails to address another party's assertion of fact, the court may consider the fact undisputed, or grant summary judgment if the facts show that the movant is entitled to it. Fed. R. Civ. P. 56(e)(2)–(3).

### B. North Carolina Law

The parties agree that North Carolina substantive law applies to all claims at issue in this matter.[2] (D.I. 96 at 2; *see also* D.I. 102 at 6; D.I. 105 at 7–8) To survive a motion for summary judgment in an asbestos-related products liability action, the "plaintiff's evidence must demonstrate that he was actually exposed to the alleged offending products." *Wilder v. Amatex*

---

[2] Plaintiffs notes that North Carolina has not specifically adopted the *Lohrmann* test. (D.I. 105 at 8) However, several federal district courts in North Carolina have recently applied the *Lohrmann* test in cases governed by North Carolina law. *See, e.g., Woolard v. Carrier Corp.*, 2020 WL 2572278, at *2 (M.D.N.C. May 21, 2020); *Whitehead v. Air & Liquid Sys. Corp.*, 2020 WL 2523169, at *2, 2 n.4 (M.D.N.C. May 18, 2020). In addition, the Delaware Superior Court has also applied the *Lohrmann* test as the correct causation standard under North Carolina law in the summary judgment context. *See, e.g., In re: Asbestos Litig.*, 2017 WL 1954941, at *2 (Del. Super. Ct. May 10, 2017) (quoting *Jones v. Owens-Corning Fiberglas Corp.*, 69 F.3d 712, 716 (4th Cir. 1995)). Further, the Fourth Circuit cited *Lohrmann* when applying North Carolina substantive law and specifically noted that the *Lohrmann* test does not conflict with North Carolina law. *See Jones*, 69 F.3d at 716, 716 n.2. Accordingly, the court applies the *Lohrmann* test here.

7

*Corp.*, 336 S.E.2d 66, 68 (N.C. 1985). Consistent with *Wilder*, "the plaintiff in a personal injury asbestos case 'must prove more than a casual or minimum contact with the product' containing asbestos in order to hold the manufacturer of that product liable." *Jones v. Owens-Corning Fiberglas Corp.*, 69 F.3d 712, 716 (4th Cir. 1996) (quoting *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156, 1162 (4th Cir. 1986)). Rather, "the plaintiff must present 'evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked.'" *Id.* (quoting *Lohrmann*, 782 F.2d at 1162–63). "Federal courts have long used this 'frequency, regularity, and proximity' test—the '*Lohrmann* test'—to evaluate proximate causation in asbestos cases arising under North Carolina law." *Woolard v. Carrier Corp.*, 2020 WL 2572278, at *2 (M.D.N.C. May 21, 2020).

### IV. Discussion

#### A. Causation

Crane Co. first argues that Plaintiffs have failed to show that Mr. Dunlap was exposed to an asbestos-containing product made, sold, or otherwise controlled in its use by Crane Co. (D.I. 102 at 7–10) In response, Plaintiffs argue that the evidence in the record creates a factual issue as to whether Mr. Dunlap was exposed to asbestos as a result of his work with Crane Co. valves. (D.I. 105 at 1, 7–10, 13) In support of their argument, Plaintiffs highlight the undisputed fact that Mr. Dunlap worked with Crane Co. valves; however, this fact alone is insufficient to satisfy *Wilder* without evidence that those valves contained asbestos attributable to Crane Co. (D.I. 105 at 2–3, 9; D.I. 108 at 2)

To overcome the record's lack of direct evidence of Mr. Dunlap's exposure to asbestos attributable to Crane Co., Plaintiffs point to circumstantial evidence and argue that such evidence creates a factual issue about whether the specific Crane Co. valves that Mr. Dunlap worked on

8

contained asbestos. (D.I. 105 a 3–6, 9–10) In general, a plaintiff may rely on circumstantial evidence to survive a motion for summary judgment. *See Roehling v. Nat'l Gypsum Co. Gold Bond Bldg. Prods.*, 786 F.2d 1225, 1228 (4th Cir. 1986) ("The evidence, circumstantial as it may be, need only establish that [the plaintiff] was in the same vicinity as witnesses who can identify the products causing the asbestos dust that all people in that area, not just the product handlers, inhaled."). However, the circumstantial evidence Plaintiffs rely upon here fails to create a factual issue such that a reasonable jury could find that Mr. Dunlap was exposed to asbestos attributable to Crane Co.

For example, Plaintiffs argue there is an issue of fact as to whether the steam header valve on the Kewanee boiler contained asbestos based on the following points: Prentis Dunlap recalled that the relevant steam header valve released steam at approximately 400 degrees Fahrenheit (D.I. 105 at 9 (citing D.I. 105, Ex. 3 at 63–64)); Crane Co. "unhesitatingly recommended" Cranite[3] packing material for steam applications and for temperatures up to 750 degrees Fahrenheit (*Id.* (citing D.I. 105, Ex. 8 at 453)); Cranite likely always contained asbestos (*Id.* (citing D.I. 105, Ex. 7 at 10)); and documents suggest that Crane Co. did not have a viable alternative to asbestos until after 1982, which is after Mr. Dunlap performed his work relevant to this case. (*Id.* (citing D.I. 105, Ex. 11))

Contrary to Plaintiffs' argument, the circumstantial evidence in the record fails to show that Mr. Dunlap was exposed to asbestos attributable to Crane Co. The exhibits upon which Plaintiffs rely do not show that the Crane Co. valves Mr. Dunlap worked on required asbestos-containing packing material or gaskets to function. (*See* D.I. 105, Exs. 9–11) In addition,

---

[3] Cranite was a sheet packing product that Crane Co. "made from an asbestos composition" and "unhesitatingly recommended for a multitude of services, such as steam . . . and for temperatures up to 750° F." (D.I. 105, Ex. 8 at 453)

9

Prentis Dunlap could not recall whether the packing materials or insulation that Mr. Dunlap worked on when repacking the steam header valve on the Kewanee boiler contained asbestos, and he never mentioned Mr. Dunlap's use of Cranite or some other packing or gasket product manufactured by or otherwise attributable to Crane Co. (D.I. 102, Ex. A at 65:1–66:16, 145:21–146:4) Plaintiffs argue that, even if Mr. Dunlap did not work on Cranite, the evidence shows that Crane Co. did not have a viable asbestos alternative until 1979 at the earliest. (D.I. 105 at 9 (citing D.I. 105, Exs. 9 & 11)) Plaintiffs' argument calls for the inference that the steam header valve at issue contained asbestos because (1) the steam header valve released steam and handled high temperatures, and (2) Crane Co. marketed a separate product—Cranite—suitable for steam and high temperature applications. (*See* D.I. 105 at 9) Such an inference is impermissibly speculative without evidence suggesting that Mr. Dunlap actually worked with Cranite or that the Crane Co. steam header valve could not function without asbestos-containing materials like Cranite. *See Lohrmann*, 782 F.2d at 1163 ("[I]t is the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture.") (quoting *Ford Motor Co. v. McDavid*, 259 F.3d 261 (4th Cir. 1958)). Therefore, without speculation, no reasonable jury could find that Mr. Dunlap's work on the Kewanee boiler's steam header valve exposed him to Cranite or some other asbestos-containing material attributable to Crane Co.

With respect to Mr. Dunlap's alleged exposure to Crane Co. valves in the manhole area, Plaintiffs rely on the following circumstantial evidence to show that those valves contained asbestos: Prentis Dunlap described the old packing material that Mr. Dunlap removed as looking like graphite (D.I. 105 at 9 (citing D.I. 105, Ex. 3 at 65)), and Crane Co. described its packing as "graphite impregnated." (*Id.* (citing D.I. 105, Ex. 6)) This circumstantial evidence would not

10

enable a reasonable jury to find for Plaintiffs on the issue of whether the relevant valves in the manhole area contained asbestos attributable to Crane Co. *See Wilder*, 336 S.E.2d at 67–68. Prentis Dunlap's deposition testimony describing the appearance of old packing material was in relation to the steam header valve on the Kewanee boiler only, not the valves in the manhole area. (D.I. 105, Ex. 3 at 63:15–65:18) The documents describing the "graphite impregnated" packing refer to Crane Co. manufactured pumps, not valves generally or the specific valves on which Mr. Dunlap worked. (D.I. 105, Ex. 6)

In sum, although Prentis Dunlap identified several specific instances in which Mr. Dunlap worked on Crane Co. valves, the court recommends granting Crane Co.'s motion for summary judgment because, without speculation, the record fails to create a factual issue as to whether Mr. Dunlap was exposed to asbestos attributable to Crane Co. *Cf. Wilder*, 336 S.E.2d at 68 (denying summary judgment where the evidence suggested that the plaintiff would "be able at trial to show exposures to [the defendant's] *asbestos-containing* product") (emphasis added); *Whitehead v. Air & Liquid Sys. Corp.*, 2020 WL 2523169, at *6 (M.D.N.C. May 18, 2020) (granting summary judgement where it was "entirely unclear from the record whether any [of the defendant's] valves on site actually contained asbestos").

Even if the Crane Co. valves that Mr. Dunlap worked on contained asbestos, the evidence in the record fails to satisfy the *Lohrmann* test. Viewed in the light most favorable to Plaintiffs, the evidence suggests that (1) Mr. Dunlap worked on the Crane Co. steam header valve on the Kewanee boiler one time for forty-five minutes; and (2) Mr. Dunlap worked on Crane Co. valves three or four times in the manholes for about thirty minutes per valve. (D.I. 102, Ex. A at 62:17–66:24, 99:13–104:19) Such evidence is insufficient to satisfy the *Lohrmann* test. *See Lohrmann*, 782 F.2d at 1163 (noting that the plaintiff had been exposed to asbestos "ten to fifteen" times

over the course of a thirty-nine year span, which the Fourth Circuit found was "not sufficient to raise a permissible inference that such exposure was a substantial factor in the development of his asbestosis"); *Whitehead*, 2020 WL 2523169, at *7 (granting summary judgement despite the fact that there was "some evidence that Mr. Whitehead worked on [the defendant's] pumps on occasion" because "the record d[id] not demonstrate exposure to those products on a regular basis or for any extended period of time"). The evidence in the record indicates that Mr. Dunlap had no "more than a casual or minimum contact" with the relevant Crane Co. valves. *See Jones*, 69 F.3d at 716 (quoting *Lohrmann*, 782 F.2d at 1162). Mr. Dunlap's work with Crane Co. valves consisted of four or five possible occurrences over the course of several years for less than five total hours of potential exposure time, which is not "a regular basis over some extended period of time" sufficient to create a factual issue regarding substantial factor causation. *See id.* (quoting *Lohrmann*, 782 F.2d at 1162–63). Therefore, the court recommends granting Crane Co.'s motion for summary judgment.

### B. Failure to Warn

Crane Co. also argues that the court should grant summary judgment in its favor with respect to Plaintiffs' failure to warn claim[4] because it requires evidence of exposure and

---

[4] The briefing before the court does not provide the elements of a failure to warn claim under North Carolina law. (*See* D.I. 102; D.I. 105; D.I. 108) A failure to warn claim under North Carolina law consists of the following elements:

> (1) the manufacturer acted unreasonably in failing to provide a warning or instruction, (2) the failure to warn or instruct was a proximate cause of harm, and (3) either (a) the failure to warn or instruct created an unreasonably dangerous condition that the manufacturer knew or should have known posed a substantial risk of harm to a foreseeable plaintiff, or (b) after the product left the manufacturer's control, the manufacturer became aware or should have become aware that the product posed a substantial risk of harm to foreseeable plaintiffs, and the manufacturer failed to take reasonable steps to provide adequate warnings or

12

causation, which is deficient in the record for the reasons described *supra*. (D.I. 102 at 11; D.I. 108 at 5) Plaintiffs argue that the evidence in the record before court shows that Crane Co. knew about the inherent dangers associated with its asbestos-containing products and failed to warn its customers of such dangers. (D.I. 105 at 11)

Under North Carolina law, "[f]ailure to warn is a type of negligence action under products liability law." *Yates v. Ford Motor Co.*, 2015 WL 3448905, at *2 (E.D.N.C. May 29, 2015) (citing *Corprew v. Geigy Chem. Corp.*, 157 S.E.2d 98, 102–103 (N.C. 1967)). To survive summary judgment a plaintiff must "show that [the] defendants' 'failure to provide adequate warning or instruction was a proximate cause of the harm for which damages are sought.'" *Id.* (quoting N.C. GEN. STAT. § 99B-5(a)). Accordingly, Plaintiffs' failure to warn claim requires evidence showing that the alleged asbestos in Crane Co.'s products caused Mr. Dunlap's injuries. *See id.* However, as articulated above, the record fails to raise any factual question concerning Mr. Dunlap's exposure to an asbestos-containing product manufactured by Crane Co. "on a regular basis over some extended period of time." *See Whitehead*, 2020 WL 2523169, at *2, 8 (granting summary judgment for some of the defendants on all of the plaintiff's claims against them, including failure to warn). Therefore, the court recommends granting Crane Co.'s motion to dismiss Plaintiffs' failure to warn claim.

### C. Punitive Damages

Crane Co. also moves for summary judgment on Plaintiffs' punitive damages claim. (D.I. 102 at 11) Plaintiffs argue that the evidence creates factual issues as to whether Crane Co.

---

instructions regarding such risk or to take other reasonable actions under the circumstances.

*Yates v. Air & Liquid Sys. Corp.*, 2014 WL 12623042, at *10 (E.D.N.C. Feb. 21, 2014) (citing N.C. GEN. STAT. § 99B-5(a)).

deliberately failed to meet its duty to warn its customers of the dangers of using its product and whether Crane Co.'s conduct amounted to fraud under North Carolina law. (D.I. 105 at 12–13) The recommendation for granting Crane Co.'s motion for summary judgment for the reasons stated in section IV.A, *supra* eliminates the need to consider punitive damages.

### D. Loss of Consortium[5]

The lack of evidence of causation forecloses plaintiff Glenda Dunlap's loss of consortium claim. For the reasons already described in detail above in section IV.A, *supra*—lack of exposure to asbestos attributable to Crane Co. and failure to satisfy *Lohrmann*—the court recommends granting Crane Co.'s motion for summary judgment on loss of consortium.

### V. Conclusion

For the foregoing reasons, the court recommends GRANTING Crane Co.'s motion for summary judgment. (C.A. No. 19-1009, D.I. 101)

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right

---

[5] Crane Co. also moves to dismiss Plaintiffs' strict liability and misrepresentation claims. (D.I. 102 at 11–12) The court recommends granting Crane Co.'s motion with respect to Plaintiffs' strict liability claim because Plaintiffs do not oppose it (D.I. 105 at 10), and because North Carolina does not recognize strict liability in products liability cases. *See Smith v. Fiber Controls Corp.*, 268 S.E.2d 504, 509–10 (N.C. 1980); *Byrd Motor Lines, Inc. v. Dunlop Tire & Rubber Corp.*, 304 S.E.2d 773, 778 (N.C. Ct. App. 1983). The court recommends granting Crane Co.'s motion for summary judgment with respect to Plaintiffs' misrepresentation claims because Plaintiffs do not oppose Crane Co.'s motion on this claim (D.I. 105 at 11), and because the record contains no evidence of any misrepresentations by Crane Co.

to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: July 16, 2021

Sherry R. Fallon
United States Magistrate Judge